UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX DRESCHER, | ) | CASE NO. 5:18CV793 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| WARDEN CHARMAINE BRACY, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |

This matter is before the undersigned on a motion to stay filed by Petitioner Alex Drescher ("Petitioner") (ECF Dkt. #7) on June 8, 2018, and a motion to dismiss filed by Respondent Warden Charmaine Bracy ("Respondent") on June 12, 2018 (ECF Dkt. #8). Respondent filed a response to Petitioner's motion to stay on June 18, 2018. ECF Dkt. #9. Petitioner did not file a response to Respondent's motion to dismiss. For the following reasons, the undersigned RECOMMENDS that the Court DENY Petitioner's motion to stay (ECF Dkt. #7), and GRANT Respondent's motion to dismiss (ECF Dkt. #8) and DISMISS Petitioner's habeas petition (ECF Dkt. #1) in its entirety with prejudice.

## I. SYNOPSIS OF THE FACTS

The Fifth District Court of Appeals, Stark County, Ohio, set for the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999). As set forth by the Fifth District Court of Appeals, the facts are:

> On the evening of July 24, 2014, and into the early morning hours of July 25, 2014, [Petitioner] visited Gatsby's Bar with X'Avire Cobb. Zebulum Schoolcraft, Dino Crawford and James Delgado were also at Gatsby's Bar. At the time Gatsby's Bar closed, the five left and got into a car driven by Schoolcraft. Everyone in the car was high and/or drunk.
>
> [Petitioner] was dropped off at a house, and Schoolcraft, Cobb, Crawford and Delgado proceeded in the car without him. Schoolcraft subsequently lost control of the car and crashed into a utility pole. As a result of the crash, X'Aive Cobb, who

> was seated in the backseat and unrestrained, hit his mouth and chipped and/or loosened a front tooth.
>
> After the accident, Schoolcraft, Cobb, Crawford and Delgado all took off running in separate directions to avoid being arrested. Cobb, who was upset about his tooth, went looking for Schoolcraft. Cobb asked [Petitioner] to help him seek out Schoolcraft through the use of Facebook and to set up a meeting for a fight.
>
> Schoolcraft received messages via Facebook about the accident, and a fight was arranged at "Shakes," an area ice cream parlor and meeting place.
>
> Dino Crawford testified at trial relative to the events of the evening/morning including the meeting at "Shakes" and the incident leading up to the shooting. He stated he observed [Petitioner] pull a gun from his side, wave it around, point it at Crawford and Schoolcraft, and offer it to Cobb. He testified [Petitioner] urged Cobb during the fight to shoot Schoolcraft. Cobb then fired seven shots into Schoolcraft, ending his life.
>
> Testimony at trial also established [Petitioner] later brokered a trade of the murder weapon for another firearm in the days following the shooting.

ECF Dkt. #8-1 at 85-86.

## II. PROCEDURAL HISTORY

On September 5, 2014, the Stark County Grand Jury indicted Petitioner on: one count of Complicity to Murder, in violation of Ohio Revised Code ("O.R.C.") § 2923.03(A)(2)/2903.02(B); one count of Complicity to Felonious Assault, in violation of O.R.C. § 2923.03(A)(2)/2903.11(A)(1); and one count of Complicity to Tampering with Evidence, in violation of O.R.C. § 2923.03(A)(2)/2903.21(A)(1). ECF Dkt. #8-1 at 5. The counts of Complicity to Murder and Complicity to Felonious Assault carried firearm specifications. *Id.* Prior to trial, Petitioner agreed to several continuances. ECF Dkt. #8 at 3-4; ECF Dkt. #8-1 at 14-16. At the trial, one of the witnesses indicated that he met Petitioner in county jail while he was "down in the hole." ECF Dkt. #8 at 4. Petitioner's counsel objected and moved for a mistrial. *Id.* The trial court issued a curative instruction and denied the mistrial. *Id.* The jury then found Petitioner guilty of Complicity to Murder and Complicity to Felonious Assault, with the firearm specifications, and Complicity to Tampering with Evidence. ECF Dkt. #8-1 at 23. Petitioner was sentenced to an aggregate prison term of twenty-one years to life. *Id.* at 25.

Petitioner appealed the trial court's decision to the Fifth District Court of Appeals on February 6, 2015. ECF Dkt. #8-1 at 30. On February 16, 2016, the Fifth District Court of Appeals affirmed the judgment of the trial court. *Id.* at 84. Petitioner then appealed to the Supreme Court of Ohio. *Id.* at 100. On May 18, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal pursuant to Supreme Court Practice Rule 7.08(B)(4). *Id.* at 128.

Petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule ("Ohio App. R.") 26(B) on October 28, 2016. ECF Dkt. #8-1 at 129. On December 1, 2016, the Fifth District Court of Appeals denied Petitioner's application to reopen his appeal as untimely. *Id.* at 137. The Supreme Court of Ohio declined to accept Petitioner's appeal of this decision on March 15, 2017. *Id.* at 159.

On March 13, 2018, Petitioner filed an application for DNA testing in the trial court. ECF Dkt. #8-1 at 160. In the application, Petitioner requested that the murder weapon be tested for DNA. *Id.* As of the date of this Report and Recommendation, the trial court's docket does not reflect any ruling on Petitioner's application for DNA testing.[1]

## III. FEDERAL HABEAS PETITION

Petitioner filed his federal habeas petition pursuant to 28 U.S.C. § 2254 on April 4, 2018.[2] ECF Dkt. #1. In the habeas petition, Petitioner asserts the following grounds for relief:

> GROUND ONE: Petitioner's convictions were obtained with evidence that was insufficient to support his convictions in violation of due process.
>
> Supporting Facts: Petitioner's conviction was obtained through the use of a witness who was known to be heavily intoxicated at the time of the crime. The remaining witnesses' testimonies were contradictory and unclear and did not establish the elements of the offenses for which Petitioner was convicted beyond a reasonable doubt as constitutionally required.

---

[1] Stark County Court of Common Pleas, Online Case Docket https://www.starkcountycjis.org/starkcrt/docket_frame?pass_case_number=2014CR1238A&pass_case_type=CR (last visited November 6, 2018).

[2] The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

> GROUND TWO: Petitioner was denied Due Process and a fair trial when the trial court denied his Motion for Mistrial.
>
> Supporting Facts: The jury was made aware of Petitioner's prior incarceration to his prejudice in emotionally charged case. This was prejudicial to the Petitioner's presumption of innocence during trial. Petitioner did not testify at trial.
>
> GROUND THREE: Petitioner was denied Due Process of law when his waiver of his speedy trial rights was not voluntary.
>
> Supporting Facts: Petitioner was deprived of time for newly hired counsel to prepare a defense in his trial. Due to the trial court's unreasonable stand, Petitioner waived his right to a speedy trial to enable his counsel to have time to prepare a defense. A defendant should not have to choose between rights, and should be educated in the right that he is deciding on so that relinquishment is intentional and not forced.
>
> GROUND FOUR: Petitioner asserts a claim of actual innocence based on DNA testing of the weapon used in the commission of the crimes in his case.
>
> Supporting Facts: Petitioner has filed a motion for DNA testing with his trial court. The DNA testing on the weapon used to commit the crimes involved in his case will show that he did not handle the weapon in a case where he was convicted on aiding and abetting or complicity. Petitioner was accused of handing/providing the weapon to the primary shooter in this case. The absence of his DNA on the weapon will show this to be untrue. [sic]

ECF Dkt. #1 at 5-10.

## IV.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run from the latest of:

> A.     The date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;

> B. The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action;
>
> C. The date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> D. The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003));

*see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir.

1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> [T]hat were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## V. STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998). Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

-8-

529 U.S. 362, 412–13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

2. The state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

3. 'The state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

4. The state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine*, 986 F.2d at 1514. The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI. ANALYSIS

### A. Motion to Stay (ECF Dkt. #7)

Petitioner filed a motion to stay on June 8, 2018. ECF Dkt. #7. Respondent filed a response on June 18, 2018. ECF Dkt. #9. In his motion to stay, Petitioner asserts that he is requesting a stay so that he can exhaust his state court proceedings, specifically, the claim presented in his motion for DNA testing. ECF Dkt. #7 at 1-2. Respondent contends that Petitioner's habeas petition is time-

barred and that his claim of actual innocence is not cognizable.³ ECF Dkt. #9 at 2. According to Respondent, Petitioner is unable to meet his burden of showing that the claim he alleges is unexhausted is not plainly meritless. *Id.* Further, Respondent avers that Petitioner has offered no reason for his failure to exhaust the claim in the state courts prior to filing his federal habeas petition. *Id.*

In order to meet the requirements for a stay, Petitioner must show: (1) good cause for his failure to exhaust the claim(s) in state court prior to filing a federal habeas petition; and (2) that the unexhausted claim(s) is not plainly meritless. *Rhines v. Weber*, 544 U.S. 269, 271, 277 (2005); *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009). Petitioner has failed to show, or assert, any reason that could constitute good cause for his failure to exhaust his claim relating to the motion for DNA testing pending before the trial court prior to filing his habeas petition. Additionally, while Petitioner claims that the issues presented in his motion for DNA testing are meritorious, the Court need not make a determination on the merits of this issue as Petitioner has failed to show good cause for his failure to exhaust this claim prior to filing his federal habeas petition. Accordingly, the undersigned recommends that the Court deny Petitioner's motion to stay (ECF Dkt. #7).

### B.  Motion to Dismiss (ECF Dkt. #8)

In the motion to dismiss, Respondent asserts that Petitioner's habeas petition should be dismissed as time-barred. ECF Dkt. #8 at 9. Respondent states that Petitioner's appeal to the Supreme Court of Ohio was denied on May 18, 2016, and that therefore Petitioner had ninety days, until August 16, 2016, to petition for a writ of certiorari in the Supreme Court of the United States. *Id.* at 12. According to Respondent, since Petitioner did not appeal to the Supreme Court of the United States, the AEDPA statute of limitations began to run on August 17, 2016. *Id.* Respondent states that the statute of limitations would have expired on August 17, 2017, absent any tolling events. *Id.*

---

³The Court need not address whether Petitioner's claim of actual innocence is cognizable as Respondent correctly asserts that Petitioner's habeas petition is time-barred and the actual innocence claim is not supported by any new evidence. *See* ECF Dkt. #8 at 16.

-11-

Continuing, Respondent states that the statute of limitations ran for seventy-two days it was tolled on October 28, 2016, when Petitioner filed his delayed application or reopen under Ohio App. R. 26(B). ECF Dkt. #8 at 12. Respondent indicates that the statute remained tolled while Petitioner appealed to the Supreme Court of Ohio on January 12, 2017. *Id.* According to Respondent, the limitations period resumed on March 16, 2017, the day after the Supreme Court of Ohio declined jurisdiction. *Id.* at 12-13. Respondent states that the limitations period then ran for 293 days and expired on January 3, 2018. *Id.* at 13. For this reason, Respondent asserts that Petitioner's habeas petition was time-barred when he handed it over for mailing on April 4, 2018. *Id.*

Respondent contends that Petitioner is not entitled to equitable tolling of the statute of limitations and that his claim that his counsel was ineffective is unsupported. ECF Dkt. #8 at 15. Continuing, Respondent states that the Sixth Circuit has held that a petitioner's *pro se* status, lack of legal knowledge, incarcerated status, and limited access to a law library do not warrant equitable tolling. *Id.* (citing *Hall v. Warden Lebanon Correctional Inst.*, 662 F.3d 745, 752 (6th Cir. 2011)). Finally, Respondent asserts that Petitioner has failed to meet his burden of showing a miscarriage of justice and that he has not presented new reliable evidence showing that he is actually innocent. *Id.* at 15-16. Respondent states that Petitioner has failed to "support his allegations of constitutional errors with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Id.* at 16 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

As of the date of this Report and Recommendation, Petitioner has not filed a response to Respondent's motion to dismiss, which was filed on June 12, 2018, and has not requested an extension of time to file a response.

Petitioner's habeas petition is barred by the AEDPA statute of limitations. As discussed above, Respondent correctly asserts that Petitioner's habeas petition was due on January 3, 2018. Petitioner did not hand his habeas petition over for mailing until April 4, 2018, three months after it was due pursuant to the AEDPA statute of limitations. Accordingly, Petitioner's habeas petition

is time-barred unless he shows that he is entitled to statutory tolling or equitable tolling, or presents new evidence showing that he is actually innocent. *See* 28 U.S.C. § 2244(d)(2); *Holland v. Florida*, 560 U.S. 631 (2010); *Schlup*, 513 U.S. at 317.

Petitioner does not assert that he is entitled to statutory or equitable tolling. Insofar as Petitioner asserts that his habeas petition should not be barred due to ineffective assistance of counsel, Petitioner was not entitled to counsel when filing his federal habeas petition and his *pro se* status does not warrant tolling. *See* ECF Dkt. #1 at 13; *Hall*, 662 F.3d at 752. Finally, Petitioner has not presented any new evidence, yet alone new reliable evidence, that shows a constitutional error or supports his actual innocence. *See Schlup*, 513 U.S. at 324. Instead, based on his fourth ground for relief and motion to stay, Petitioner appears to claim that his motion for DNA testing will result in the requisite new evidence. Petitioner's motion for DNA testing does not constitute new evidence showing that he is actually innocent. Rather, the motion for DNA testing is a request that the trial court order the production of new evidence that Plaintiff claims will show his innocence. Such a motion does not constitute new evidence for the purposes of a federal habeas petition and Petitioner has presented no new reliable evidence showing that he is innocent of the underlying convictions. Accordingly, the undersigned recommends that the Court grant Respondent's motion to dismiss (ECF Dkt. #8) and dismiss Petitioner's habeas petition as time-barred by the AEDPA statute of limitations.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DENY

Petitioner's motion to stay (ECF Dkt. #7), and GRANT Respondent's motion to dismiss (ECF Dkt. #8) and DISMISS Petitioner's habeas petition (ECF Dkt. #1) in its entirety with prejudice.

Date: November 6, 2018 */s/ George J. Limbert*
George J. Limbert
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Crim. P. 59. Failure to file objections within the specified time constitutes a WAIVER of the right to appeal the Magistrate Judge's recommendation. *Id.*